IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

BUMBLE BEE FOODS, LLC,      *
                            *
        Plaintiff,          *
                            *
    v.                      *    CV 109-042
                            *
MALO, INC., and MASSMANN    *
ENTERPRISES, INC.,          *
                            *
        Defendants.         *

# O R D E R

The captioned case is presently before the Court on Ann Marie Caffrey's Motion to Intervene. (Doc. no. 30.) Based upon the relevant law and the parties' briefs, Caffrey's motion is **DENIED**.

## I. BACKGROUND

Ann Marie Caffrey seeks to intervene in the lawsuit between Bumble Bee, Inc. ("Bumble Bee") and Malo, Inc. and Massmann Enterprises ("Malo & Massmann") filed in this Court on March 26, 2009. In the summer of 2007, Bumble Bee and its subsidiary Castleberry's Food Company ("Castleberry") distributed tainted canned food goods in

the United States, causing an outbreak of botulism. This outbreak resulted in a nationwide recall of a significant number of Bumble Bee products. (Doc. no. 1 ¶ 1.) Malo & Massmann "manufacture, sell, and provide maintenance service" for equipment used in Bumble Bee's food processing to sterilize canned food products. (Doc. no. 30, Ex. B, ¶ 37.) Bumble Bee alleges that Malo & Massmann manufactured a system that was defective, and that this defect had a contributing role in the botulism outbreak. (Id. ¶¶ 39-42.) Thus, Bumble Bee has brought the current law suit against Malo & Massmann to recover various damages incurred as a result of the nationwide recall.

Caffrey is the personal representative of the Estate of her deceased brother Christopher Caffrey. (Id. ¶ 3.) On September 9, 2007, Christopher became completely paralyzed and died as a result of consuming a tainted canned good distributed by Bumble Bee. (Id. ¶¶ 1, 18.) Caffrey filed a wrongful death suit on behalf of her brother against Bumble Bee and Castleberry in the Thirteenth Judicial District Court of New Mexico in late June 2008.[1]

---

[1] New Mexico was the place of Christopher's residence at the time of his death.

In the spring of 2009, Caffrey became aware of Malo & Massmann's potential role in causing Christopher's death. On June 10, 2009, Caffrey amended her complaint in New Mexico state court to include Malo & Massmann as a defendant. (Doc. no. 30, Ex. B.) In response, Malo & Massmann filed a motion to dismiss, arguing that the Thirteenth Judicial District Court of New Mexico lacked personal jurisdiction over them because the can that caused Christopher's death was processed by Malo & Massmann machinery in Georgia. (Doc. no. 30, Ex. C.) The New Mexico Court has not resolved the issue of whether the New Mexico long arm statute and constitutional due process permit suit against Malo & Massmann in New Mexico.

Meanwhile, the Georgia statute of limitations for wrongful death runs on September 9, 2009. See Miles v. Ashland Chem. Co., 410 S.E.2d 290, 291 (Ga. 1991). If the New Mexico court cannot exercise personal jurisdiction over Malo & Massmann, it will be necessary for Caffrey to file suit again Malo & Massmann in Georgia before the statute of limitations expires. Thus, Caffrey argues that because she may file a separate suit against Malo & Massmann in this Court, "given the similarity of the claims, judicial economy, and the rules of procedure," her intervention in the current pending action is appropriate.

## II. **DISCUSSION**

Caffrey moves for intervention pursuant to both Rule 24(a) and 24(b).[2] Federal Rules of Civil Procedure 24(a) permits a plaintiff to intervene as a matter of right in certain circumstances. Alternatively, Rule 24(b) provides the Court with discretion to grant permissive joinder. The Court will address each of these in turn.

### A. Rule 24(a) Intervention

Federal Rules of Civil Procedure 24(a) provides that:

(a) Intervention of Right: On timely motion, the court must permit anyone to intervene who:

. . . .

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Eleventh Circuit has interpreted this rule to require a party seeking intervention of right to demonstrate that: "(1) his application to intervene is

---

[2] The Court notes that in Caffrey's Motion to Intervene, she states that intervention is "consistent with the purpose behind Rule 19 (required joinder of parties)." (Doc. no. 30 at 6.) However, Caffrey does not provide any argument or analysis on this point. Moreover, her motion is titled as a "Motion to Intervene" instead of a motion for joinder. Thus, the Court does not address whether Rule 19 joinder is appropriate in this case.

4

timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." Stone v. First Union Corp., 371 F.3d 1305, 1308-09 (11th Cir. 2004) (quoting Worlds v. Dep't. of Health & Rehabilitative Servs., 929 F.2d 591, 593 (11th Cir. 1991)).

i. Timeliness of the motion

This Court must consider four factors when assessing the timeliness of a motion brought under Rule 24(a): "the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." Angel Flight of Georgia, Inc. v. Angel Flight America, Inc. 272 Fed.

Appx. 817, 819 (11th Cir. 2008) (citing United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir. 1983)).

Here, Caffrey alleges that she discovered that Malo & Massmann may have contributed to her brother's death in late spring 2009. She amended her complaint to add Malo & Massmann to her lawsuit on June 10, 2009. (Doc. no. 30, Ex. B.) Malo & Massmann filed their Motion to Dismiss for lack of personal jurisdiction on July 16, 2009. She filed her motion to intervene in this case on August 19, 2009, approximately one month after learning of the potential problems with jurisdiction over Malo & Massmann in New Mexico.

Bumble Bee asserts that it will be prejudiced by the "delay and duplication of effort that would necessarily result if intervention is permitted." (Doc. no. 34.) Bumble Bee points out that discovery in this case must be completed in less than three months pursuant to the Court's Scheduling Order. At this time, many depositions have already taken place. The renewal of these depositions would delay the litigation. Moreover, Caffrey's claims would create new issues for discovery that are unrelated to the instant claims between Bumble Bee and Malo & Massmann. For instance, the parties would now need to conduct discovery on damage and proximate cause issues relating to

Christopher Caffrey's death. Thus, Bumble Bee has demonstrated that it will suffer prejudice if Caffrey is permitted to intervene five months after the inception of this suit.

On the other hand, Caffrey will not suffer any prejudice should this Court deny her motion to intervene. Caffrey admits to this Court that should the New Mexico court determine that it may properly exercise personal jurisdiction over Malo & Massmann, she will "most likely withdraw her claims in Georgia and proceed with her case against all Defendants in New Mexico." (Doc. no. 30 at 3.) She further states that if the Court does not permit her to intervene in this action, she will simply file a separate action in this Court. With other appropriate forums for Caffrey to bring her claims, she will not suffer prejudice from the denial of her motion. See In re CP Ships Ltd. Sec. Litig., 2008 WL 2473685 (M.D. Fla. June 19, 2009).

Upon the foregoing, the Court will assume that the length of time between when Caffrey was apprised of the potential problems with personal jurisdiction over Malo & Massmann in New Mexico and the filing of the instant motion is reasonable. Nonetheless, the danger for prejudice

against Bumble Bee coupled with the lack of prejudice for Caffrey weighs against a finding that her motion is timely.[3]

ii. Caffrey's Interest in the Litigation

The second prong of the Eleventh Circuit's test requires that a party have "an interest relating to the property or transaction which is the subject of the action." A party is entitled to intervene as a matter of right under Rule 24(a)(2) if the interest in the subject matter of the litigation is "direct, substantial, and legally protectable." Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting Georgia v. United States Army Corps of Eng'rs, 302 F.3d 1242, 1249 (11th Cir. 2002)).

To determine whether Caffrey possesses the requisite interest to intervene, the Court must look to the subject matter of the litigation. Georgia v. U.S. Army Corps of Engineers, 302 F.3d 1242, 1252 (11th Cir. 2002). Rule 24(a) requires the intervenor's interest to be based on the action pending before the court. Bayshore Ford Truck Sales, Inc. v. Ford Motor Co., 471 F.3d 1233, 1246 (11th Cir. 2006) (citing S. Cal. Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002) (explaining that Rule 24(a) requires a relationship between the intervenor's legally

---

[3] This Court is unaware of any unusual circumstances militating for or against a determination that the application is timely.

8

protectable interest in the suit and the plaintiff's claims, and that such a relationship exists "if the resolution of the plaintiff's claims actually will affect the applicant").

Caffrey cites O.C.G.A. § 51-4-5 as evidence of her legally protectable interest. Indeed, O.C.G.A. § 51-4-5 provides that the executor of the decedent's estate may bring an action for wrongful death. However, she has not demonstrated that this right to bring a wrongful death action is related to the subject matter of the underlying action.

In this case, Bumble Bee seeks to recover damages from Malo & Massmann for the "failure of the Malo system to sterilize the canned food products it processed." (Doc. no. 1 ¶ 3.) Bumble Bee alleges that it suffered damages in excess of $40 million related to out-of-pocket expenses incurred in connection with the nationwide food recall, lost profits, the loss of consumer confidence, and the cost associated with the investigation of the under-processed food, as well as litigation expenses. The subject matter of this litigation is Bumble Bee's economic loss caused by Malo & Massmann. Caffrey has no direct, substantial, or legally protectable interest in the lost profits and other economic losses of Bumble Bee. The subject matter of a

wrongful death claim involves a determination of who is liable for a death, which involves causation and elements of damages that will not be addressed in the instant law suit. Admittedly, the entity liable to Caffrey for the wrongful death of her brother, assuming she can prove causation, may be determined in the present case because fault for the tainted cans may be attributed to either Bumble Bee or Malo & Massmann. Thus, Caffrey has an interest in the litigation, but it is not the type of interest that must be protected by Rule 24(a) intervention. Her wrongful death claim is not derived from anything that will occur in this case. Indeed, she will maintain her legal right to sue the responsible party regardless of whether Malo & Massmann are liable to Bumble Bee or not. As Caffrey has already admitted, she is able to file a separate suit against Malo & Massmann, and thereby protect her interest against those potentially liable parties.

Upon the foregoing, Caffrey is unable to establish that her motion to intervene was timely or that she has an interest in the transaction which is the subject of this action. Moreover, she is able to protect her interest against both parties through separately filed lawsuits for wrongful death. Accordingly, Caffrey may not intervene as a matter of right under Rule 24(a).

**Rule 24(b) Intervention**

The Court next considers whether permissive intervention is proper in this case. Rule 24(b) provides that "on timely motion, the court may permit any one to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." When there is no right to intervene under Rule 24(a), it is wholly within the Court's discretion to allow permissive intervention under Rule 24(b). Worlds, 929 F.2d at 595. The Federal Rules instruct that the Court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Certainly, permissive intervention could be granted in this case because Caffrey's claim shares limited common facts with the instant case. However, it is clear that Caffrey's intervention in this case would "unduly delay or prejudice the adjudication of the original parties' rights." As discussed previously, Caffrey's intervention would delay the discovery process and necessitate additional discovery on new and unique issues relating to Christopher Caffrey's death. Further, the addition of a

11

wrongful death claim to Bumble Bee's suit against Malo & Massmann would complicate the adjudication of this case. Malo & Massmann and Bumble Bee would now require medical experts, damage experts and fact witnesses to testify on Caffrey's wrongful death claim. Should this case proceed to trial, the jury would be required to decide the separate and distinct issue of Christopher's cause of death. The Court finds that Caffrey's intervention would cause delay and prejudice to both parties. Thus, permissive intervention is not appropriate in this case.

### III. CONCLUSION

Caffrey has not satisfied the four elements of intervention of right pursuant to Rule 24(a). The Court finds that permissive intervention under Rule 24(b) is also inappropriate. Accordingly, Caffrey's Motion to Intervene (doc. no. 30) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 31st day of August, 2009.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA